UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

UNITED STATES OF AMERICA,

            Case No. 2:13-cr-9-1

v.

            Honorable R. Allan Edgar

SCOTT BERNARD WILL,

    Defendant.
_____/

## **REPORT AND RECOMMENDATION**

Defendant has filed a motion to suppress evidence in this case. Doc. No. 119. In his motion, Defendant seeks to suppress all evidence seized pursuant to a search warrant for Apartment #1, 5th Street, Calumet, Michigan, as well as all evidence derived from the seized items. The government filed a response to the motion [Doc. No. 127], and the undersigned held a hearing on the morning of November 25, 2013.

Background

In early April 2013, Defendant rented a room at the Wonderland Motel in Calumet, Michigan. Defendant rented the room with his girlfriend, Kristin Bergeron, for a two week period. Four to five days before April 16, 2013, Defendant made arrangements to stay at the apartment of Suzanne London in Calumet. Defendant occupied the bedroom of London's apartment during this time. Most of Defendant's possessions were at London's apartment, and Defendant had permission to enter and leave the apartment as he wished.

On April 16, 2013, undercover agent Michael Rowe made arrangements with Defendant to purchase one ounce of a controlled substance referred to by Defendant as

"substance A" for $2,100.00. Per Defendant's instructions, agent Rowe called Defendant when he arrived at a laundromat in Calumet. Defendant met Rowe outside the building and they both entered Rowe's vehicle. Defendant then brought Rowe to London's apartment, Apartment #1, in the upstairs of the building. Rowe was wearing covert recording equipment. London was present in the apartment, and she made a statement to Rowe indicating that Defendant and Bergeron had been staying there. Defendant went downstairs to get "substance A" from Derek and Gerald Guzek, who were waiting nearby the building in their vehicle. Defendant took some of the substance out of a baggie with a spoon, measured it using a scale, and placed the measured portion in a second baggie. Defendant gave the second baggie to Rowe. The substance later tested positive for Methylenedioxypyrovalerone (MDPV), a Schedule 1 controlled substance. Rowe gave Defendant $2,100.00 in pre-recorded cash.

Rowe left the apartment and, after reaching his vehicle, advised Upper Peninsula Substance Enforcement Team (UPSET) officers of the purchase. The officers, including Trooper Brian Muladore, went upstairs in the building and knocked on the door of London's apartment. A male voice inside the apartment asked who was there. An officer responded by saying, "police." The voice said something about a search warrant. The UPSET officers opened the unlocked door and entered the apartment. Upon entering, Muladore witnessed Derek Guzek throw money onto the couch as he stood up. The officers secured the four occupants - Defendant, Gerald Guzek, Derek Guzek and London - and placed them in the hallway outside the apartment. The four occupants were not placed under arrest at that time, and were not free to leave after they had been secured and placed in the hallway. The officers then conducted a protective sweep of the apartment.

Muladore left the apartment and drove to the Calumet State Police post, where he drafted the search warrant for the apartment. Rowe was also present at the station, and he assisted Muladore. The warrant identified the apartment as the residence to be searched. It gave permission to seize, among other items, "any and all illegally possessed controlled substances, including but not limited to substances commonly known as 'bath salts' or 'white rush.'" The affidavit supporting the warrant, which was signed by Muladore, stated that another undercover officer had purchased "substance A" for $2,100.00 at the apartment, and that a field test of the substance had tested positive for MDPV. The affidavit further stated that the same undercover officer had purchased "substance A" from the same suspect within the last month at a different location, which had also tested positive for MDPV. The affidavit stated that the affiant and other officers had made contact with four persons in the apartment after the most recent sale, and that while securing the apartment, the affiant observed a large amount of money being thrown onto the couch by Derek Guzek. It took approximately two hours for the search warrant to be drafted and signed by the 97th District Court Magistrate. A search of the apartment was then conducted, at which time some of the pre-recorded cash, suspected drug paraphernalia, and cell phones were seized. Defendant, Derek Guzek and Gerald Guzek were placed under arrest.

Expectation of Privacy

In order to claim Fourth Amendment protection, "a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable[.]" *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). Defendant asserts that he had a reasonable expectation of privacy in London's apartment as an occupant of that apartment. The government disputes that assertion.

3

The Supreme Court has held that an overnight guest has a reasonable expectation of privacy in his host's house. *Id.*, *citing Minnesota v. Olson*, 495 U.S. 91, 98-99 (1990). Someone who is present in a residence solely to participate in a business transaction for a relatively short period of time does not have such an expectation. *See id.* at 90. The Court finds that Defendant has established that he had a reasonable expectation of privacy in London's apartment. Defendant's testimony establishes that he had been staying at the apartment for four to five days. London's statement on the video recording confirms that Defendant and Bergeron had been staying there. Most of Defendant's possessions were at the apartment, and Defendant was free to come and go as he pleased. Defendant was an occupant of the apartment for Fourth Amendment purposes.

## Sufficiency of Warrant

To issue a search warrant, a magistrate must have "had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013), *quoting United States v. Greene*, 250 F.3d 471 (6th Cir. 2001). "Probable cause exists 'when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place.'" *Id*. In his brief, Defendant asserts that the warrant was defective because it mischaracterized the substance at issue as "bath salts" or "white rush." However, as the government points out in its response, the warrant authorized the seizure of "any and all illegally possessed controlled substances, including *but not limited to* substances commonly known as 'bath salts' or 'white rush'" (emphasis added). Defendant further asserts that the search warrant lacked particularity in that it failed to name Defendant as the suspect who sold "substance A" to the undercover officer.

4

The undersigned fails to see the relevance of this assertion, given that the search warrant described the premises to be searched and the items to be seized.

Defendant conceded at the hearing, and the undersigned agrees, that the affidavit provided probable cause to believe that illegal drug activity had taken place at the apartment and that evidence of that activity would be found during the search. Defendant asserts, however, that the entry into, and subsequent securing of, the apartment was unlawful, and the subsequent seizure of the evidence was therefore tainted.

### Securing of Apartment

The government argues that the UPSET officers' entry into and securing of the apartment was not unlawful because of the presence of exigent circumstances. Exigent circumstances, "including the need to prevent the destruction of evidence, permit police officers to conduct an otherwise permissible search without first obtaining a warrant." *Kentucky v. King*, 131 S. Ct. 1849, 1853-54 (2011). The government asserts that, after the officers stated that they were the "police" and heard a response about a search warrant, they had reason to fear that evidence was going to be destroyed, which established an exigent circumstance. At the hearing, Defendant's counsel made the assertion that any exigent circumstance that existed was created by the police. This argument was expressly rejected by the Supreme Court in *Kentucky v. King*, 131 S. Ct. 1849 (2011). In that case, the Court held that "the exigent circumstances rule applies when the police do not gain entry to premises by means of an actual or threatened violation of the Fourth Amendment." *Id.* at 1862. The Court found that the officers' loud knocking on a door and announcing "police" did not constitute an actual or threatened Fourth Amendment violation. *Id.* It is clear that

5

the UPSET officers' conduct of knocking on the door and announcing their presence did not create the exigent circumstance.

The question then becomes whether an exigent circumstance existed at the time that the officers opened the door and entered the apartment. To establish exigent circumstances, the government must show "an objectively reasonable basis for concluding that the loss or destruction of evidence is imminent." *United States v. Saddler*, 498 Fed. Appx. 524, 528 (6th Cir. 2012), *quoting United States v. Sangineto-Miranda*, 859 F.2d 1501, 1512 (6th Cir. 1988). The court must then "balance the interests by weighing the government interests being served by the intrusion against the individual interest that would be protected if a warrant were required." *Id.*, *quoting United States v. Plavcak*, 411 F.3d 655, 664 (6th Cir. 2005). The undersigned concludes that the first requirement is clearly met in this case. The UPSET officers had probable cause to believe that a controlled substance, along with cash from the controlled buy, was present in the apartment. After they announced themselves, they heard someone say something about a search warrant, which could have reasonably led them to conclude that the occupants did not plan on opening the door and, knowing that police were outside, planned on destroying evidence. *See Illinois v. McArthur*, 531 U.S. 326, 331-32 (2001). In balancing the government's interests against the interests of Defendant, the undersigned finds that the entrance was justified. The officers had a significant interest in ensuring that no one took "substance A" or the substantial amount of pre-recorded cash from the apartment. The fact that people were seen coming and going from the building following the controlled buy highlighted this potential risk. The police limited their search to entering the apartment, removing and securing the occupants in the hallway, and engaging in a protective sweep, rather than

engaging in a full search of the apartment. In considering the relevant factors, the undersigned concludes that the exigent circumstance exception applies in this case, and the officers' entry into the apartment was lawful. Once the officers had entered the apartment, their securing of the apartment was similarly lawful. *Segura v. United States*, 468 U.S. 796, 810 (1984) ("securing a dwelling on the basis of probable cause, to prevent the destruction or removal of evidence, while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents.").

Alternatively, the government asserts that, since there was probable cause to obtain the search warrant before the UPSET officers entered the apartment, the evidence obtained in the apartment should not be suppressed. In other words, the government asserts that the evidence is admissible under the inevitable discovery doctrine. In *United States v. Taylor*, the Sixth Circuit noted the following:

> We think it is worth noting that if the officers had not made the protective sweep of the apartment, but had simply waited for the return of the officer who went for the search warrant – assuming, of course, that such a course of action had not resulted in an attack on the officers who remained in the apartment and the destruction of the evidence during the wait – the search pursuant to the warrant would inevitably have led to the discovery of [the defendant and drugs, drug paraphernalia, and weapons]. *See United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995) (describing the "inevitable discovery doctrine," which "allows unlawfully obtained evidence to be admitted at trial if the government can prove by a preponderance that the evidence inevitably would have been acquired through lawful means.").

*United States v. Taylor*, 248 F.3d 506, 514 (6th Cir. 2001). In the present case, the undersigned has already concluded that the search warrant was lawful. The evidence in this case would therefore have been inevitably discovered by the execution of the search

7

warrant, assuming that it had not already been removed or destroyed. The inevitable discovery doctrine provides an alternative basis for admission of the evidence.

## Conclusion

It is respectfully recommended that Defendant's motion to suppress [Doc. No. 119] be DENIED.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court by December 3, 2013. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. MICH. L.CIV.R. 72.3(b). Failure to timely file objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated:  11/26/2013   /s/ Timothy P. Greeley
Timothy P. Greeley
United States Magistrate Judge